[No. 35363-2-I.    Division One.    December 27, 1995.]

FRED THATCHER, *Appellant*, v. THE DEPARTMENT OF
SOCIAL AND HEALTH SERVICES, *Respondent*.

*Sandra V. Kaddoura*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Thomas M. Masco, Assistant*, for respondent.

BAKER, C.J. — Fred Thatcher appeals an administrative order finding that bank accounts seized under the child support enforcement statutes are not subject to an earnings exemption. He argues that one-half of the bank account funds held by the Department of Social and Health Services (DSHS), Office of Support Enforcement (OSE) is exempt from withholding as earnings under RCW 74.20A-.090. Thatcher also contends that the agency failed to notify him that the bank funds might qualify for the earnings exemption, violating his due process rights. We affirm and hold that the earnings exemption does not apply to bank accounts.

## FACTS

Thatcher and his present wife own and operate a small business. The Thatchers receive all of their income from the business. They are not salaried employees. Instead, they deposit a $900 draw into their personal account each month. They deposit the remaining income in a business account at another bank. In March 1993, OSE served each bank with an order to withhold and deliver the contents of the accounts. Thatcher filed timely requests for administrative hearings to determine the exemptions applicable to each account. The administrative law judge found that Thatcher's spouse already recovered her marital half of the money as a nonobligated spouse, and that no other exemptions applied. The judge dismissed Thatcher's request for a hearing. Both the agency's appellate office and the superior court affirmed the initial order and decision.

## I

Thatcher argues that DSHS erroneously interpreted

and applied the earnings exemption statute[1] to his seized accounts. Thatcher contends that because his marital half of the funds can be traced to earnings, the 50 percent earnings exemption in RCW 74.20A.090 applies. We find, however, that the earnings exemption applies only to funds still in an employer's hands. Once funds enter the employee's possession, they become former earnings, subject to complete seizure by the agency.

OSE may issue an order to withhold and deliver to any entity that holds property subject to a child support judgment.[2] The support enforcement statute provides an exemption for 50 percent of "earnings" withheld under an order to withhold and deliver.[3] The exemption provision defines "earnings" as

> compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise. . . . Earnings shall specifically include all gain derived from capital, from labor, or from both combined, not including profit gained through sale or conversion of capital assets.[4]

Thatcher maintains that language such as "compensation paid . . . for personal services" and "all gain derived from . . . labor" encompasses bank funds traceable to earnings. Nevertheless, other clauses negate Thatcher's interpretation. For example, the language refers to earnings as funds that are "paid, or to be paid weekly, monthly, or at other intervals[.]"[5] The provision also mandates that orders to withhold earnings will continue against each periodic payment until the debt is satisfied. The provision authorizing orders to withhold and deliver also distin-

---

[1]RCW 74.20A.090.

[2]RCW 74.20A.080.

[3]RCW 74.20A.090.

[4]RCW 74.20A.090.

[5]RCW 74.20A.090.

guishes between bank funds and earnings.[6] For example, RCW 74.20A.080(4)(a)(ii) commands entities possessing property to deliver it to DSHS within 20 days, while RCW 74.20A.080(4)(a)(iii) instructs those holding earnings to deliver the appropriate amount "at each succeeding disbursement interval . . . on the date earnings are payable to the debtor[.]" The language of periodic payments does not suit funds on deposit in a bank. Nor do the words "paid or payable" or "paid or to be paid" necessarily imply that former earnings may be exempt. As we interpret it, the Legislature designed this language to embrace both presently paid earnings ("paid") and future earnings ("payable"), so that a debtor may not try to evade payroll deduction by getting an advance on his or her paycheck.

Finally, the statute establishing the right to a hearing for bank account seizures indicates a legislative intent to distinguish between present and former earnings:

> If the department initiates collection action under this chapter against a community bank account, the debtor or the debtor's spouse . . . has a right to an adjudicative proceeding . . . to establish that the funds in the account, or a portion of those funds, *were* the earnings of the nonobligated spouse, and are exempt . . . .[7]

By its use of the past tense, the Legislature acknowledges the changed status of earnings once deposited into an account. Significantly, the statute also does not provide a hearing to determine whether the debtor's former earnings are exempt.

■ DSHS urges this court to consider the state and federal garnishment statutes to help determine the legislative intent behind the earnings exemption statute. The use of analogous but unrelated statutes to determine

---

[6]RCW 74.20A.090.

[7](Emphasis added.) RCW 74.20A.120.

legislative intent is considered unreliable.[8] Where the unrelated statute is patterned similarly, however, its construction may still be relevant.[9] The two garnishment statutes contain closely structured language and provisions and therefore aid our analysis.

First, we note the Washington garnishment statute, which also provides a 50 percent exemption for earnings. The statute defines earnings as "compensation paid or payable to an individual for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."[10] The law specifically exempts bank account funds from garnishment only to the extent that they contain money from government benefits such as AFDC and Social Security.[11] It is significant that in this closely analogous area, our Legislature chose not to extend the earnings exemption to bank accounts. The only possible explanation is that our Legislature believes that bank account funds can no longer constitute earnings.

Second, the federal Consumer Protection Act defines earnings as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise," mirroring RCW 74.20A.090.[12] Two cases under the Act hold that lump sum funds cannot qualify as earnings. First, the Ninth Circuit held that the Act protected periodic income needed to support the debtor and his family on a daily or monthly basis. The court distinguished bank accounts, stating that they have "neither an element of periodicity nor the critical rela-

---

[8]*Anderson v. Janovich*, 543 F. Supp. 1124, 1129 (W.D. Wash. 1982).

[9]*See Anderson*, 543 F. Supp. at 1129.

[10]RCW 6.27.010.

[11]RCW 6.27.140(1).

[12]15 U.S.C. § 1672.

tionship to a person's subsistence that a paycheck does."[13] Second, the United States Supreme Court held that the Act applied only to periodic payments and not to "every asset that is traceable in some way to . . . compensation.' "[14]

Thatcher argues that the analogous statutes above do not apply because RCW 74.20A.090 contains the following additional language: "Earnings shall specifically include all gain derived from capital, from labor, or from both combined[.]" Thatcher asks us to hold that his funds are earnings because they arose from his labor. His argument ignores the Legislature's periodicity concern. When read in context, the provision simply instructs that earnings can include not only payments from a job but also regular payments from interest income or investments.

We also disagree with Thatcher's assertion that distinguishing between former and current earnings reaches an illogical result. He argues that under our rule, earnings considered necessary for subsistence before they are paid are considered superfluous funds once deposited in a bank. Nevertheless, our construction of the statutes does not reach an unjust or illogical result in Thatcher's case. Here, OSE presented Thatcher with an order to withhold income, and did not seize his bank accounts until he failed to comply within 20 days.[15]

Thatcher also maintains that our decision amounts to a rule that self-employed persons cannot have earnings under the statute, because they are not in an employer-employee relationship. This need not be the case. The Thatchers' periodic draw from the business constitutes earnings before it is taken for their personal use. Also, self-employed persons may protect income used for busi-

---

[13]*Usery v. First Nat'l Bank of Arizona*, 586 F.2d 107, 110 (9th Cir. 1978).

[14]*Kokoszka v. Belford*, 417 U.S. 642, 651, 94 S. Ct. 2431, 41 L. Ed. 2d 374 (1974).

[15]This approach would be extremely unjust if the same funds were subjected to withholding first by the employer and then by the bank. This "double dipping" scenario, however, is not presented by the facts here.

ness purposes through business structuring and specialized bank accounts.

Finally, Thatcher seems to argue that our determination that bank accounts cannot contain earnings conflicts with the agency's own rule providing for a hearing to determine what exemptions might apply in a bank account collection action.[16] The rule refers to exemptions for public assistance funds, the spouse's former earnings, and the spouse's solely owned property.[17] The WAC does not suggest that the earnings exemption may apply. Therefore, our decision is entirely consistent with the rule.

## II

■■ Thatcher argues that OSE violated his procedural due process rights by failing to summarize the RCW 74.20A.090 earnings exemption on the bank order. RCW 74.20A.080(2)(b) requires that any order to withhold and deliver summarize the terms of RCW 74.20A.090. Because the weight of authority indicates that RCW 74.20A.090 does not apply to bank accounts, the issue becomes whether OSE had to notify Thatcher of the exemption regardless of its applicability.

The express command of RCW 74.20A.080(2)(b) is clear. Requiring OSE to summarize an inapplicable provision, however, would work against the statute's purpose—to inform debtors of rights available to them. Courts should not construe statutes to reach absurd or futile results.[18] The statute obviously contemplates that the agency will use a generic order to withhold and deliver. Because OSE has instead chosen to tailor its forms to suit the type of

---

[16]WAC 388-14-390(1).

[17]WAC 388-14-390(4)(a), (b), (c).

[18]*State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989).

funds targeted, the law should not require it to summarize inapplicable exemptions.

## III

Thatcher requests attorney fees and costs, stating that OSE erroneously interpreted the law and asserted no valid defense on appeal. Because we hold for the agency in this matter, we deny Thatcher's request.

Affirmed.

COLEMAN and AGID, JJ., concur.

[No. 13679-5-III.    Division Three.    January 16, 1996.]

MICHAEL JOSEPH BOTT, ET AL., *Respondents* v.
ROCKWELL INTERNATIONAL, *Appellant.*