Sweeney, C.J.
 

 In
 
 Thompson v. St. Regis Paper Co.,
 
 102 Wn.2d 219, 685 P.2d 1081 (1984), our Supreme Court created an exception to the general rule that employees are terminable at will. According to
 
 Thompson,
 
 if an employer creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced to thereby remain on the job, the employer may be bound by those promises.
 
 Thompson,
 
 102 Wn.2d at 230. Michael Bott was fired by his employer, Rockwell International. He sued Rockwell, claiming that Rockwell’s policies and procedures made such promises and that Rockwell broke those promises before and in the course of firing him.
 

 The primary issue we are asked to resolve is whether the representations set out in Rockwell’s policies and procedures amount to a promise of specific treatment in a specific situation, and, if they do, whether Rockwell violated those promises. The standard of review is deferential to the jury’s verdict. It requires that we admit the truth of the opposing party’s evidence and all inferences reasonably flowing from that evidence and requires that the evidence be interpreted most strongly against Rockwell and in the light most favorable to Bott.
 
 Holland v. Columbia Irrigation Dist.,
 
 75 Wn.2d 302, 304, 450 P.2d 488 (1969). Applying that standard, we conclude that there is sufficient evidence on which a reasonable jury could
 
 *329
 
 have found promises of specific treatment in specific situations, reliance on those promises by Bott, and a breach of those promises.
 

 Bott began working for Rockwell in 1977. At that time, and until 1987, Rockwell operated the Hanford Nuclear Reservation under a contract with the United States Department of Energy. Bott worked as a program business representative in Rockwell’s waste management program. The waste management program disposed of radioactive waste at the Hanford site. As part of his job, Bott calculated the cost of disposal and set a disposal rate. He would then send a letter to companies generating waste at the Hanford site, advising each of the rate for the next fiscal year. United Nuclear Corporation (UNC) generated radioactive waste at the Hanford site and would therefore be impacted by any rate increases.
 

 In July 1986, Bott drafted a rate increase letter and sent it through Rockwell’s chain of command for approval. His letter was not approved and never sent. Although the evidence is conflicting, it was apparently well known that Rockwell and UNC intended to jointly bid for the new contract with the Department of Energy to manage the Hanford site. Any increase in UNC’s waste disposal rates would adversely affect the competitiveness of its bid. Bott was first told by his supervisors to come up with an alternative billing technique. Later, he was told to move the rate increases to another Rockwell program. Bott viewed this as a conflict of interest and complained about it. After he complained, his fortunes with Rockwell declined precipitously.
 

 According to Bott, his job performance came under closer scrutiny. In September 1986, Dave Eder, Bott’s direct line supervisor in waste management, gave Bott a memorandum entitled Formal Documentation of Performance Problems and Future Job Requirements, criticizing Bott’s job performance. Bott had previously received job performance evaluations only once a year and his job performance evaluations had always been rated as "very good.”
 

 
 *330
 
 In October 1986, Bott filed a standards of business conduct card with Rockwell’s home office, outlining his concerns over the way in which the disposal rates were being handled.
 

 In December 1986, the Department of Energy awarded the contract for the Hanford operations to Westinghouse Electric Company rather than Rockwell. In March 1987, Bott received an interim performance appraisal which rated his performance as marginal. Bott requested an independent investigation of the appraisal — a procedure provided for in the Rockwell employee policy manual. The Employee Relations Department investigated his complaint and concluded the actions were justified. Bott then requested a hearing from the Personnel Review Board— also a procedure provided for in Rockwell’s employee policy manual.
 

 Bott received a letter around May 26, 1987, notifying him that Westinghouse (the new contractor) intended to continue his employment. On that date, Bott was also told by Rockwell supervisors that if his performance did not turn around within 30 days he would be fired. On June 17, 1987, Bott talked to Pete Shaw, a Rockwell program manager, about Bott’s job performance. Their conversation degenerated into an argument during which Bott told Shaw he did not know his rear end or ass (the exact wording was disputed) from a hole in the ground. After admitting his statement during this conversation, Bott was fired. He was also informed that the Personnel Review Board agreed with the termination. Bott was escorted by two armed and uniformed Hanford patrolmen back to his work area and off the Hanford site.
 

 Westinghouse refused to employ Bott after it assumed control of the Hanford operations. He has been unemployed except for a four-day period since his termination.
 

 Bott filed this action against Rockwell in 1988. He amended his complaint three times, ultimately asserting 12 separate causes of action, including breach of the
 
 *331
 
 contract of employment, unlawful diversion of withholding a wage, defamation, wrongful termination in violation of public policy, blacklisting, violation of constitutional rights, intentional infliction of emotional distress, negligent infliction of emotional distress, interference with contractual relationship and business expectancy, fraudulent misrepresentation, loss of wages and other special damages by unlawful conduct, and loss of consortium. Rockwell moved for summary judgment.
 

 By June 1992, the court had dismissed all of Bott’s causes of action except for wrongful discharge based on a violation of public policy because of his "whistleblowing” activities, and his claim that Rockwell breached its promises of specific treatment in specific situations
 
 (:Thompson
 
 claims).
 
 [1]
 
 The jury returned a verdict for past and future lost wages in the amount of $211,000 based on the
 
 Thompson
 
 exception to the terminable-at-will doctrine, but found no violation of public policy by Rockwell.
 

 Rockwell appeals the verdict. Bott cross-appeals the court’s refusal to instruct the jury that only a good faith belief that a statute has been violated is necessary to invoke the whistleblower public policy exception to the terminable-at-will doctrine. He also appeals the trial court’s summary dismissal of his claims of defamation,
 
 *332
 
 negligent infliction of emotional distress, and interference with a business expectancy.
 

 Discussion
 

 Wrongful Discharge
 

 Rockwell challenges the sufficiency of the evidence to support Bott’s cause of action by assigning error to the trial court’s refusal to grant its motion for directed verdict and failure to grant judgment as a matter of law. The standard of review is substantial. A challenge to the sufficiency of the evidence admits the truth of Bott’s evidence and any inference drawn therefrom and requires that the evidence be viewed in a light most favorable to Bott. The standard requires a conclusion by the trial court, and by us, that there is no evidence or inference derived therefrom by which this verdict can be sustained.
 
 Holland v. Columbia Irrigation Dist.,
 
 75 Wn.2d 302, 304, 450 P.2d 488 (1969).
 

 Specifically, the evidence here, when viewed in a light most favorable to Bott, must show (1) that the manual created an atmosphere of job security and fair treatment with promises of specific treatment in specific situations, (2) which Bott justifiably relied on, and (3) the company breached promises made in the manual resulting in damage to the employee.
 
 Thompson v. St. Regis Paper Co.,
 
 102 Wn.2d 219, 233, 685 P.2d 1081 (1984);
 
 Siekawitch v. Washington Beef Producers, Inc., 58
 
 Wn. App. 454, 459, 793 P.2d 994 (1990). Rockwell does not contest that the policies and procedures at issue here applied to Bott.
 

 Rockwell provided ample written rules, regulations, policies and procedures for grievances, employee evaluations, appeals and termination. They include: General Plant Rules (Ex. 30), Employee Problem Presentation and Grievances (Ex. 31), Performance Appraisal Program (Ex. 32), and Personnel Terminations (Ex. 47). Bott told the jury he was familiar with them and relied on them. He then
 
 *333
 
 discussed each one and outlined how, in his judgment, each was violated. He ultimately came up with 12 separate violations. Each when viewed in the light most favorable to Bott provides support for his claim. We will review only a few of the promises on which Bott predicates his claim.
 

 We begin with the General Plant Rules. They require, among other things, that managers "review with Employee Relations all cases involving potential disciplinary action, including warning notices, Employee Contact and Improvement Reports, Manager’s Personnel Memorandum, time off without pay, and discharge.” Bott says it was not done. These General Plant Rules also required consideration of all circumstances surrounding the violation including: the seriousness of the offense; discipline administered to others for the same or similar violations; previous violations of a like or similar nature by the same individual and the discipline administered; the degree to which health, security, or safety was jeopardized; record of past performance; general attitude; and external influences or extenuating circumstances. Bott testified these factors were not considered prior to his termination.
 

 The Employee Problem Presentation and Grievances required prompt and impartial resolution of grievances, problems and complaints. Again Bott presented evidence that his dispute with management was neither resolved promptly nor was his manager objective and impartial in the handling of this dispute. This Employee Problem Presentation and Grievances procedure also allowed an appeal to the Employee Relations /Affirmative Action Department. Following any appeal, the Employee Relations/Affirmative Action Department would then meet "with the employee and an appropriate management representative at the earliest opportunity.” Bott testified that no meeting took place.
 

 Finally, Rockwell’s Performance Appraisal Program required, among other things, documentation regarding Bott’s job performance and discussions of his performance
 
 *334
 
 appraisals. Bott presented evidence that Rockwell did neither.
 

 This is ample evidence for the jury’s finding that Rockwell both established policies and procedures which promised specific treatment in specific situations and then breached those promises.
 

 Passion and Prejudice
 

 Rockwell next argues that the verdict was the result of passion or prejudice. Again the standard of review is substantial. We will not disturb an award of damages unless it is outside the range of substantial evidence in the record, shocks the conscience, or appears it was arrived at as the result of passion or prejudice.
 
 Bingaman v. Grays Harbor Community Hosp.,
 
 103 Wn.2d 831, 835, 699 P.2d 1230 (1985);
 
 Rasor v. Retail Credit Co.,
 
 87 Wn.2d 516, 531, 554 P.2d 1041 (1976). This verdict does not. There is ample evidence to justify the award of damages. Dr. Wolfgang Franz, an economist, testified that Bott’s total lost earnings as a result of the termination were between $600,000 and $1,200,000. The jury awarded $176,000 for lost earnings and benefits and future earnings of only $35,000. The award does not reflect outrage, animosity or spite. It is amply supported by the testimony.
 

 Bott’s Cross-Appeal
 

 Bott raises several issues in his cross-appeal. We address each in order.
 

 Good Faith Belief — Public Policy Exception
 

 He first complains that the trial court refused to instruct on his theory that a good faith belief is enough to support his cause of action for wrongful discharge in violation of public policy. Current case law in this state does not support his argument. Unfortunately, Bott did not comply with RAP 10.3(g), requiring a party to include a separate assignment of error for each instruction, and nei
 
 *335
 
 ther the brief (contrary to RAP 10.4(c)) nor the record includes a copy of the proposed instruction that includes the "good faith belief’ wording he wants us to consider.
 
 Thomas v. French,
 
 99 Wn.2d 95, 101, 659 P.2d 1097 (1983). We will nonetheless address the assignment of error since the issue is well framed by the record and the briefing.
 
 Lewis v. Estate of Lewis,
 
 45 Wn. App. 387, 389, 725 P.2d 644 (1986).
 

 In Washington, the public policy exception to the employment-at-will doctrine is a narrow one.
 
 Thompson,
 
 102 Wn.2d at 232;
 
 Roe v. Quality Transp. Servs.,
 
 67 Wn. App. 604, 607, 838 P.2d 128 (1992). It requires first a clear manifestation of public policy.
 
 Thompson,
 
 102 Wn.2d at 232. And as we have noted,
 
 Thompson
 
 requires that we find, not create, a clear public policy.
 
 Roe,
 
 67 Wn. App. at 610. The trial court here correctly instructed the jury that Bott had to prove Rockwell violated either the letter or policy of the law.
 
 Farnam v. CRISTA Ministries,
 
 116 Wn.2d 659, 669, 807 P.2d 830 (1991);
 
 Dicomes v. State,
 
 113 Wn.2d 612, 620, 782 P.2d 1002 (1989).
 

 In
 
 Dicomes,
 
 this state first applied the public policy exception of wrongful discharge to "whistleblowers.” There, the court stated that rather than imposing a strict requirement of proving an employer’s actual violation of a statute, courts were to consider whether the employer’s conduct constituted either a violation of the letter or the policy of the law.
 
 Dicomes,
 
 113 Wn.2d at 620. Cited with approval was the Arizona Supreme Court conclusion: "The relevant inquiry is not limited to whether any particular law or regulation has been violated, although that may be important, but instead emphasizes whether some 'important public policy interest embodied in the law’ has been furthered by the whistleblowing activity.”
 
 Dicomes,
 
 113 Wn.2d at 621 (quoting
 
 Wagner v. Globe,
 
 150 Ariz. 82, 89, 722 P.2d 250, 257 (1986)). The court in
 
 Dicomes
 
 concluded that in that instance "[i]n the arena of discretionary political decisionmaking, plaintiffs arguably
 
 good faith belief
 
 in the righteousness of her conduct is too tenuous a ground
 
 *336
 
 upon which to base a claim for wrongful discharge.”
 
 Dicornes,
 
 113 Wn.2d at 624 (emphasis added).
 

 Farnam
 
 further illustrates the narrowness of the
 
 Di-comes
 
 holding. There, the court emphasized that the focus under the
 
 Dicomes
 
 test is on the employer’s wrongdoing, not the employee’s actions.
 
 Farnam,
 
 116 Wn.2d at 671. And therefore the cause of action fails if the employer acted within the law.
 
 Cf. Farnam,
 
 116 Wn.2d at 670 (declining to extend exception to an employee that admits the employer’s actions were legal).
 

 Bott proposes a "good faith” standard. Such a standard would expand the public policy exception beyond that described by the Supreme Court in
 
 Thompson
 
 as a "narrow public policy exception . . . .”
 
 Thompson v. St. Regis Paper Co.,
 
 102 Wn.2d 219, 232, 685 P.2d 1081 (1984). It would undermine the court’s announced policy of protecting against frivolous lawsuits and "allow[ing] trial courts to weed out cases that do not involve any public policy principle,” and of allowing employers to make personnel decisions without fear of incurring civil liability.
 
 Thompson,
 
 102 Wn.2d at 232.
 

 Like the employee in
 
 Dicomes,
 
 Bott differed with a superior’s chosen course of action.
 
 Dicomes,
 
 113 Wn.2d at 624. And like
 
 Dicomes,
 
 "plaintiff’s arguably good faith belief in the righteousness of [his] conduct is too tenuous a ground upon which to base a claim for wrongful discharge.”
 
 Dicomes,
 
 113 Wn.2d at 624.
 

 Bott was unable to demonstrate that Rockwell had violated the law, a policy, or even a regulation in regards to its accounting practices. The court therefore appropriately dismissed that cause of action.
 

 The judgment of the trial court is affirmed.
 

 The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record.
 
 See
 
 RCW 2.06.040; CAR 14.
 

 
 *337
 
 Munson and Thompson, JJ., concur.
 

 [1]
 

 At trial, both counsel and the trial court appear to have confused this second cause of action first created in
 
 Thompson v. St. Regis Paper Co.,
 
 102 Wn.2d 219, 685 P.2d 1081 (1984). They referred to it as an "implied contract claim.” It is not. The claim is based on an equitable exception to the terminable-at-will doctrine created by
 
 Thompson. See Shaw v. Housing Auth.,
 
 75 Wn. App. 755, 761, 880 P.2d 1006 (1994),
 
 review denied,
 
 125 Wn.2d 1024 (1995). An employee may enforce his or her employer’s promises of specific treatment in specific situations. The court’s instruction 10 set out, and the arguments of counsel address, the correct elements of this equitable exception to the terminable-at-will doctrine. Rockwell neither objects to the elements instruction nor makes any assignment of error on appeal that the wrong theory was argued and submitted. We therefore address the question based on the
 
 Thompson
 
 exception to the general rule of specific treatment in specific situations rather than the one denominated by the parties — -implied contract.
 
 McGuire v. State, 58
 
 Wn. App. 195, 197-98, 791 P.2d 929,
 
 review denied,
 
 115 Wn.2d 1021 (1990),
 
 cert. denied,
 
 499 U.S. 906 (1991).