[No. 20805-9-II.    Division Two.    January 23, 1998.]
JOHN L. KLONTZ, ET AL., *Appellants*, v. PUGET SOUND POWER & LIGHT COMPANY, *Respondent*.

*James A. Province* of *Buskirk Province, Inc., P.S.*, for appellants.

*John Deery-Schmitt* and *Nancy Williams* of *Perkins Coie*, for respondent.

BRIDGEWATER, A.C.J. — John L. and Carol S. Klontz appeal the trial court's order of summary judgment dismissing Mr. Klontz's claims of defamation and breach of implied contract against Puget Sound Power & Light Company after he was terminated from employment for failing to adequately supervise an employee who violated Puget Power's sexual harassment policy. We affirm.

In evaluating a motion for summary judgment, we use the test set forth in *Ernst Home Ctr., Inc. v. United Food & Commercial Workers Int'l Union*, 77 Wn. App. 33, 40, 888 P.2d 1196 (1995) (citing *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989)). If the moving party is a defendant and shows the absence of a material fact, the plaintiff must then set forth specific facts showing a genuine issue of material fact for trial. *Ernst*, 77 Wn. App. at 40 (citing *Young*, 112 Wn.2d at 225-26). We consider the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party; the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Ernst*, 77 Wn. App. at 40 (citing *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990); *Young*, 112 Wn.2d at 226).

I

To prevail on a defamation claim, the plaintiff must prove the following elements: (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages. *Mark v. Seattle Times*, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981). Puget Power's termination letter to Klontz indicates that he was

terminated because he failed to prevent, correct, or report "unwanted, sexually-oriented conduct" committed by a Port Townsend Service Center employee under his supervision against other employees. Klontz's complaint for defamation is based on comments by unidentified Puget Power employees to a former employee that Klontz was terminated because he had not reacted or responded adequately to what he knew or should have known about the violating employee. There was no evidence of or inference as to the identity of the alleged speakers.

Klontz fails to show a genuine issue of material fact, not just as to one element of defamation, but as to all elements:

(1) There is no evidence that the statement was false; in fact, the statement was true;

(2) There is no evidence of an unprivileged communication. There is no evidence that the unidentified speakers were acting within their scope of employment or with the knowledge and consent of Puget Power. *Demopolis v. Peoples Nat'l Bank*, 59 Wn. App. 105, 796 P.2d 426 (1990);

(3) There is no evidence of fault on the part of Puget Power. Because Klontz is a private figure, he must prove that Puget Power was negligent. *LaMon v. Butler*, 112 Wn.2d 193, 197, 770 P.2d 1027 (1989); and

(4) Since there is no evidence that the communications to the former Puget Power employee by current employees were false, Klontz cannot prove damages. *Herron v. King Broadcasting Co.*, 112 Wn.2d 762, 771, 776 P.2d 98 (1989). In fact, Klontz admitted that he did not know of anyone who held him in less regard since his termination than they had previously.

■ Dismissal of the defamation claim on summary judgment was appropriate because Klontz failed to set forth specific facts showing that genuine issues of material fact did exist.

## II

■ Klontz claims that Puget Power created an implied

contract that modified his at-will employment.[1] We utilize *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 104, 864 P.2d 937 (1994), and *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984) to determine whether an employee policy manual can modify a terminable-at-will relationship. To prove that the employer breached its promises of specific treatment in specific situations, the plaintiff must show (1) that the manual creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations, (2) which the employee justifiably relied on, and (3) the company breached such promises made in the manual, resulting in damage to the employee. *Bott v. Rockwell Int'l*, 80 Wn. App. 326, 331-32, 908 P.2d 909 (1996) (citing *Thompson*, 102 Wn.2d at 233; *Siekawitch v. Washington Beef Producers, Inc.*, 58 Wn. App. 454, 459, 793 P.2d 994 (1990)). General statements of company policy are not binding. *Thompson*, 102 Wn.2d at 231.

Whether an employment policy manual contains a promise of specific treatment in specific situations, whether the employee justifiably relied on the promise, and whether the promise was breached are questions of fact, and only if reasonable minds could not differ in resolving these questions is it proper for the trial court to decide them as a matter of law. *Burnside*, 123 Wn.2d at 104-05; *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 522, 826 P.2d 664 (1992). "Only those statements in employment manuals that constitute promises of specific treatment in specific situations are binding." *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613, 762 P.2d 1143 (1988) (citing *Thompson*, 102 Wn.2d at 230).

---

[1] *Bott v. Rockwell, Int'l*, 80 Wn. App. 326, 908 P.2d 909 (1996) notes that the cause of action created in *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984) is not an "implied contract claim" but is based on an equitable exception to the terminable-at-will doctrine. *Bott*, 80 Wn. App. at 331 n.1. Because Klontz cited only *Thompson* in his response to Puget Power's summary judgment motion, and cites only *Bott* and *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 864 P.2d 937 (1994), on appeal, we choose to treat his claim not as an implied contract claim, but as a *Thompson* exception to terminable-at-will employment, which requires promises by the employer of specific treatment in specific situations.

The Corporate Policy Guide, which we refer to as the "policy guide," states that "[t]ermination may be initiated by either the Company or the employee." "Termination requires the approval of two levels of management above the employee and will be given in writing before termination except in cases of extreme misconduct or safety risk." "Management employees will receive as much notice as possible and may receive up to one month's salary with Vice President approval." The policy guide also defines "discharge for cause" as "[t]he termination of employment for reasons such as incompetence, work performance, insubordination, theft, falsification of records or violation of Company rules including misconduct." The policy guide also provides that, when an employee is discharged for cause, the supervisor "[s]ubmits documentation to immediate supervisor for approval for discharge. Obtains supervisor's approval for discharge. Gives employee written notice of discharge."

Klontz failed to specify below and fails to specify on appeal what words or expressions contained in the policy guide promise specific treatment in specific situations. On that basis alone we could find that no material fact exists and summary judgment was appropriate. But, assuming that Klontz did prove promises of specific treatment in specific situations, he fails to present genuine issues of material fact regarding the other requirements: justifiable reliance and breach.

## A. No Justifiable Reliance

Klontz fails to show a genuine issue of material fact regarding whether he justifiably relied on the promises contained in the policy guide. He admitted during depositions that he never received any materials during his management positions that described the terms and conditions of his employment and admitted that there was no agreement with Puget Power regarding the length of his employment. Klontz believed that the only particular procedures required for terminating an employee were

contained in the policy guide and did not believe that any agreement limited the circumstances under which his employment could be terminated. Klontz testified that, although he did refer to the policy guide once during his management position, it was brief and only in reference to terminating a union employee. Klontz admitted during this deposition that only after he was terminated from employment did he actually read the policy guide in detail and become aware of its language and the specific procedures it contained for terminating employment.

Klontz fails in his late attempt to raise a genuine issue of material fact by filing an affidavit stating that he did rely upon the policy guide, thereby contradicting his previous, unambiguous deposition testimony. "When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Marshall v. AC&S, Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989) (citing *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). To the extent that Klontz's subsequent declaration contradicts his prior deposition testimony, a genuine issue of material fact on the issue does not arise. *See Isaacson v. DeMartin Agency, Inc.*, 77 Wn. App. 875, 877 n.1, 893 P.2d 1123 (1995) (citing *Marshall*, 56 Wn. App. at 185).

### B. No Breached Promises

Klontz also fails to raise a genuine issue of material fact regarding whether Puget Power breached promises made in the policy guide, resulting in damage to him. He fails to specify on appeal how Puget Power breached the policy guide. In response to the summary judgment motion, Klontz submitted a declaration to the trial court that claimed Puget Power breached the policy guide by failing to consult his current supervisor, Don Yuen; by failing to

notify Klontz of the pending investigation; and because the circumstances under which an employee may be discharged for cause did not exist.

As required by the policy guide, Klontz was given written notice of his termination in the form of the February 4, 1992 letter. Klontz was discharged for cause, which is defined as "termination of employment for reasons such as incompetence, work performance, . . . or violation of Company rules including misconduct." Dorothy Graham, Director of Human Resources, testified that the investigator recommended that Klontz be discharged "because of his inaction in supervising the offending lineman *which appeared to be a clear violation of Puget's Sexual Harassment Policy*. . . . I concurred with the investigator's recommendation and forward [sic] it to Jerry Henry, then Puget's Vice-President of Operational Services. Mr. Henry was in Mr. Klontz' direct chain of command in February 1992." (Emphasis added.) The letter of termination explained that Klontz was terminated for failing to carry out his duties as manager of the Port Townsend service center:

> Until recently, you were the manager ultimately responsible for the conduct of Port Townsend Service Center employees. Along with other Puget Power employees, you have received two formal training seminars regarding sexual harassment. Through this training and other communications, Puget Power has repeatedly expressed its commitment to a working environment where employees are not subjected to unwelcome, offensive conduct of a sexual nature. Your job as manager of the Port Townsend Service Center included responsibility for carrying through on the Company's commitment. You and other managers had the support of the Company in carrying out this role . . . .
>
> . . . You were personally made aware of at least some of these complaints. As Service Center manager, you were responsible—with help from higher management or Human Resources, if necessary—for an environment in which such conduct would not occur or, if it did, would be promptly corrected. You were also obligated by CPG-18 to report these complaints to Human Resources. *We have concluded that you*

*failed to carry out these responsibilities. Thus, you share responsibility for the unacceptable conduct which recently occurred.*

Finally, and of equal concern, during our investigation you denied any recollection of any of these complaints. We believe it is highly unlikely that you would not recall events of this magnitude, and therefore *we have concluded that you were not truthful.*

(Emphasis added.)

Jerry Henry, Vice-President of Operating Services, made the ultimate decision to terminate Klontz and, in making that decision, consulted Gary Swofford, Vice-President of Division and Customer Services while Klontz was manager of the Port Townsend Service Center; Dorothy Graham, Director of Human Resources; and Robert Nave, General Manager of the North Kitsap/Jefferson Division and Klontz's supervisor while manager of the Port Townsend Service Center. Ed Schild and Don Yuen, Klontz's immediate supervisors at the Bremerton division office, were not consulted, though Henry did notify Schild of the decision before Klontz was terminated. Henry testified that he did not consult Schild or Yuen because they were not in Port Townsend while Klontz was manager and therefore had no direct knowledge of the events that formed the basis of Klontz's termination. Klontz fails to raise any genuine issues of material fact regarding Klontz's reliance on the corporate policy guide or regarding Puget Power's breach. The trial court properly dismissed on summary judgment Klontz's claim of breach of implied contract.

Affirmed.

SEINFELD and HUNT, JJ., concur.