[No. 11302–3–II.   Division Two.   March 17, 1989.]

GARY MARINCOVICH, ET AL, *Appellants*, v. JOSEPH B. TARABOCHIA, JR., ET AL, *Respondents*.

*Fred A. Johnson* and *George F. Hanigan,* for appellants.

*James E. Warme* and *Calbom, Pond, Falkenstein, Warme & Engstrom,* for respondents.

WORSWICK, J.—Members of the "Altoona Snag Union," an association of commercial fishermen, appeal a summary

judgment holding unenforceable their claim to exclusive rights, commonly called "drift rights," to fish certain portions of the Columbia River with gill nets, and enjoining them from interfering with fishing in such areas by nonmembers. We affirm.

It has become customary over a long time for groups of fishermen to form associations the purpose of which is to improve fishing areas of the river by clearing snags and then to claim exclusive fishing rights in those areas. The group in question, the Altoona Snag Union, claims to have existed for more than 50 years. Its membership is exclusive; one can join only by buying an existing membership.

No state agency has officially recognized the claims of these groups. They enforce their claims through various kinds of self–help, none of which can be described as courteous. This litigation is the culmination of a simmering dispute that finally erupted when Altoona attempted to extend its claims to a deep area of the river that did not require snag removal.

██ It is axiomatic that food fish, prior to taking, are state property and that the State has the exclusive right to regulate fishing. *Washington Kelpers Ass'n v. State,* 81 Wn.2d 410, 502 P.2d 1170 (1972), *cert. denied,* 411 U.S. 982 (1973); *Vail v. Seaborg,* 120 Wash. 126, 207 P. 15 (1922). Conceding this, and that they can assert no claim against the State, the appellants nevertheless contend that, until the State asserts itself on the subject, they can acquire and enjoy "drift rights" against all others. There is no legal basis whatsoever for their position.

Appellants' case is built entirely on the assertion that they have acquired these rights by custom and usage. All of the cases they cite have to do with the use of custom to interpret contracts or otherwise to flesh out rights already recognized by law. They offer no authority, and we have found none, for the proposition that rights having no other legal basis can come into being solely by the custom of those claiming the rights.

The ultimate flaw in the appellants' position lies in their failure to recognize that the State exists to hold the rights of and to serve its people. Appellants' claim would arrogate exclusively to them rights owned in common by all of the people of the state. This is contrary to law, and it is elementary that no rights can arise from a custom that violates the law. *Myers v. Exchange Nat'l Bank,* 96 Wash. 244, 255, 164 P. 951 (1917).

Affirmed.

ALEXANDER, C.J., and REED, J., concur.

Review granted at 113 Wn.2d 1006 (1989).