[No. 56199–1. En Banc. March 8, 1990.]

GARY MARINCOVICH, ET AL, *Petitioners,* v. JOSEPH B. TARABOCHIA, JR., ET AL, *Respondents.*

*Peter J. Eglick & Associates*, by *Peter J. Eglick*, for petitioners.

*James E. Warme* (of *Calbom, Pond, Falkenstein, Warme & Engstrom*), for respondents.

DOLLIVER, J.—Plaintiffs and defendants are commercial gill–net fishermen who make their living on the lower Columbia River. Plaintiffs are members of the Altoona

Snag Union, Inc., which pools together funds collected from its members in order to coordinate the yearly removal of snags and debris from areas of the river where gill–net fishing would otherwise be impossible.

Snags are most commonly cleared from drifts, which are expanses of water over which gill–net fishermen set their nets. Certain drifts on the lower Columbia River have long been recognized and maintained according to local custom and usage. The State of Washington Department of Fisheries issues snagging permits to individual fishermen for the purpose of authorizing snag removal.

Membership in the Altoona Snag Union is evidenced by ownership of a "drift right", by which the union gives an exclusive right to fish a particular drift where snags have been removed. Drift rights have traditionally been treated as valuable personal property and have been passed to family members through probate and divorce proceedings. It is undisputed fishermen have paid valuable consideration for their drift rights.

Membership in the union is exclusive. Agreement to help pay for snag clearing does not make one a member; instead, a person interested in joining must locate an already existing right and purchase it with the union's approval. Enforcement of drift rights occurs in a variety of ways, all of which include some degree of intimidation and, in some cases, threats to life and property. The most common form of enforcement is "corking". This entails placing one's fishing net so close to that of the offending fisherman that the offender is forced to remove his net from the water to avoid ripping or tearing.

In October 1985, plaintiffs filed a complaint for damages and injunctive relief against defendants arising from a dispute over an area of the river not clearly controlled under the drift right system. The trial court imposed a permanent injunction against the defendants and ordered them to stop interfering with plaintiffs' fishing operations. Defendants filed a counterclaim challenging the legality of plaintiffs' drift rights. In February 1987, defendants filed a motion for

summary judgment on this issue. The trial court concluded that before a material issue of fact can arise, plaintiffs must possess a basic legal right to exclude others from fishing the cleared drifts. Finding no such right existed, the trial court granted defendants' summary judgment motion. The court granted a stay of judgment pending the outcome of plaintiffs' appeal.

The Court of Appeals affirmed the trial court's ruling. *Marincovich v. Tarabochia,* 53 Wn. App. 633, 769 P.2d 866 (1989). We also affirm.

■ When reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. *Highline Sch. Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 15, 548 P.2d 1085 (1976). A summary judgment motion can be granted only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The court must consider the facts in the light most favorable to the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson,* at 437.

Plaintiffs argue local custom and usage constitute a sufficient legal basis for recognizing they have a proprietary interest in drift rights; as such, they assert the trial court erred by granting summary judgment in favor of defendants on this issue. Plaintiffs base their position on essentially three separate arguments: analogy to trade use and custom as applied in contract law; reliance on customary water appropriation principles as a means to perfecting a legal right; and the notion that because the Department of Fisheries issues snagging permits, these permits impliedly give the holders the exclusive right to fish the areas they have cleared.

■ We reject plaintiffs' analogy to contract law under the facts of this case. As the Court of Appeals succinctly stated, the cases plaintiffs cite in support of their argument have to do with applying custom and trade use to interpret

contracts or otherwise to flesh out rights already recognized by law. *Marincovich,* at 634. In this case, neither contracts nor rights previously given legal recognition are at issue. For this reason, the Court of Appeals properly rejected plaintiffs' argument.

■ Nor do we accept plaintiffs' argument that under customary water appropriation principles, their drift rights should be legally recognized. Article 21, section 1, of the Washington Constitution provides that the use of the waters in this state for irrigation, mining, and manufacturing purposes shall be deemed a public use. In addition, 43 U.S.C. § 661 also recognizes rights to the use of water for mining and other such purposes when the same have been recognized by local custom, laws, and the decisions of courts. Neither of these provisions, nor the case law cited by plaintiffs in support of their argument, convince us this case should be analyzed under this theory. *See Isaacs v. Barber,* 10 Wash. 124, 38 P. 871 (1894); *Thorpe v. Tenem Ditch Co.,* 1 Wash. 566, 20 P. 588 (1889); *Hunter v. United States,* 388 F.2d 148 (9th Cir. 1967); *Department of Parks v. Department of Water Admin.,* 96 Idaho 440, 530 P.2d 924 (1974). *See also* Trelease, *Coordination of Riparian and Appropriative Rights to the Use of Water,* 33 Tex. L. Rev. 26 (1954). The appropriated use of water is not analogous to the recognition of drift rights for fishing.

■■ We also reject plaintiffs' argument that the Department of Fisheries, by issuing snag removal permits, has impliedly given permit holders the exclusive right to fish the areas they clear. The Department of Fisheries has been given the duty to promote orderly fisheries and to enhance and improve commercial fishing within the state. RCW 75.08.012. It does this in part by issuing snagging permits since the permits enable it to discern between those persons who are legally clearing snags and those who may be fishing illegally. Nothing in the record or the case law supports plaintiffs' argument that this somehow carries with it the exclusive right to fish the areas covered by the individual permits.

It has long been established in Washington and Oregon that citizens enjoy equal access to the navigable waters of their respective states. *Morris v. Graham,* 16 Wash. 343, 47 P. 752 (1897); *Radich v. Fredrickson,* 139 Or. 378, 10 P.2d 352 (1932); *Driscoll v. Berg,* 137 Or. 499, 293 P. 586, 1 P.2d 611 (1931); *Johnson v. Jeldness,* 85 Or. 657, 167 P. 798 (1917); *Hume v. Rogue River Packing Co.,* 51 Or. 237, 83 P. 391 (1908). In addition, this court has previously held the State, in its sovereign capacity, owns the fish in its waters. *Washington Kelpers Ass'n v. State,* 81 Wn.2d 410, 502 P.2d 1170 (1972), *cert. denied,* 411 U.S. 982 (1973). As such, individual fishermen cannot assert a property right over the fish until they are caught. *Washington Kelpers Ass'n,* at 415 (quoting *Vail v. Seaborg,* 120 Wash. 126, 131, 207 P. 15 (1922)). These cases establish the fact plaintiffs do not enjoy a legal right to portions of public waters to the exclusion of other citizens of this state.

In its memorandum opinion, the trial court found *Radich v. Fredrickson,* 139 Or. 378, 10 P.2d 352 (1932) to be analogous to the present case. In *Radich,* gill–net fishermen sued to enjoin other fishermen from erecting a fish trap which would have severely interfered with their ability to fish the river. *Radich,* at 379. The court held defendants did not have a right to set up fish traps since to do so would interfere with the right to fish the public waters of the state, a right shared equally by all citizens. *Radich,* at 386.

It is interesting to note the plaintiffs in *Radich* had established an operation similar to the one established by plaintiffs in this case. The fishermen would clear snags from the river and take turns fishing the drifts to the exclusion of fishermen who did not participate in the clearing efforts. *Radich,* at 385. However, *Radich* is distinguishable from the present case in one important aspect; namely, under the system enjoyed in that case, any fisherman who wanted to help clear snags was invited to fish. *Radich,* at 385. In the present case, however, the same interest in helping to clear snags is not enough to gain access to the drifts. Instead, the inquiring individual must locate and

purchase, with the union's approval, an already existing drift right before he will be allowed to fish the drifts. The cases cited and discussed above establish that local custom and usage do not support legal recognition of plaintiffs' drift rights. This is true even though drift rights have existed in Oregon and Washington for many years. As the Court of Appeals stated, plaintiffs' claim would arrogate to them rights owned in common by all of the people of the state. *Marincovich,* at 635. We affirm the Court of Appeals.

A final comment: Although not necessary to the disposition of this case, we recognize the trial court's reluctance in ruling against plaintiffs in this case. In the words of the trial court:

> [T]here is no dispute as to the allegation that the denial of the rights asserted by plaintiff would result in, (1) chaos in the use of the drifts; (2) economic detriment to those holders of the drift rights; (3) to avoid overcrowding, no additional fishermen should be used on those drifts.

Clerk's Papers, at 174–75. We also are sympathetic to these concerns. However, under RCW 75.08, regulation of the particular issues raised in this case is vested within the Department of Fisheries. That Department, by allowing plaintiffs to carry out snag clearing for many years, may have allowed plaintiffs to operate under the impression their drift rights were legally enforceable. By this opinion that impression comes to an end. The problems presented in this case must be resolved by departmental rules and regulations, not by the self help of the Altoona Snag Union. Only the Department is in a position to establish the orderly promotion of gill–net fishing on the Columbia River.

CALLOW, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.